H. A. HOGER, Appellee, v. LOVIRA M. HART, Appellant.

Homestead: ABANDONMENT: EVIDENCE. Under the evidence in this
1   case submission of the question of the abandonment of the homestead was proper.

Contracts: BREACH: EVIDENCE: ADMISSIONS. Where the evidence was such that the jury would have been warranted in finding that defendants sent plaintiff to their son as the person authorized to close a sale of their property, statements made by him as to the contract, and his reasons for refusing to carry it out, were competent against defendant in an action for breach of the contract.

Same: AGENCY: EVIDENCE. In this action for breach of contract to convey land the evidence is held sufficient to take the question of authority to sell to the jury.

Verdict: REDUCTION ON APPEAL. Where the trial court has found a verdict to be excessive the question of the extent to which it should be reduced becomes one for the court, and the appellate court may still further reduce it without usurping the province of the jury.

*Appeal from Floyd District Court.*—HON. C. H. KELLEY, Judge.

THURSDAY, MARCH 20, 1913.

ACTION at law to recover damages for breach of contract to sell real estate. There was a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed* on conditions.

*Ellis & Ellis* and *Ernest Hausberg,* for appellant.

*J. C. Campbell* and *H. J. Fitzgerald,* for appellee.

WEAVER, C. J.—The appellant was for many years the owner in fee of a tract of about eleven acres of unplatted land within the limits of Charles City, Iowa. With her husband, Oliver W. Hart, she used and occupied the land as a homestead until some months prior to the alleged transaction in this case, when they removed to and occupied another residence in the same city. Whether such removal was an abandonment of the homestead is one of the material issues in this case. The petition alleges that on or about December 30, 1908, the defendant, with her husband, entered into an oral agreement to sell and convey the land to plaintiff at the agreed price and valuation of $5,000, to be paid $1,000 down on

delivery of the deed, and the remainder in certain prescribed installments, and that, in part performance of said contract or as an earnest thereof, plaintiff then and there paid to one Ferguson, for and on behalf of the defendant, the sum of $50. It is further alleged that within a few days after this transaction, and in violation of said agreement, appellant and her husband united in conveying the property to their son, Charles Hart, thereby rendering themselves unable to perform their said contract. Plaintiff further alleges that, by reason of the failure of the appellant to convey said land to him on the terms of their said agreement, he has been damaged to the extent of $7,000, for which he asks judgment.

The defendant denies entering into any contract or agreement to sell the land, and denies that either Ferguson or Oliver W. Hart (who has since died) was her agent or was authorized by her to make sale of the land, or to bind her to any agreement made by them or either of them. She admits having conveyed the land to her son, as she had lawful right to do, and further alleges that the premises in controversy were then her homestead, and not subject to valid sale by oral contract.

The court instructed the jury, in effect, that the evidence without conflict showed that the land had for many years been the appellant's homestead, and that the burden was upon plaintiff to establish the fact that such homestead had been abandoned prior to the alleged agreement to sell, and that, to show such abandonment, it was necessary to prove that both appellant and her husband had left or moved from the property with the common intention on their part not to return thereto, or to resume their home therein, or that such a common determination not to return to such homestead had been reached by them after their removal therefrom. Should such abandonment of the homestead not be found, the jury were told plaintiff could not recover, and a verdict should be returned for the appellant. On the other hand, the court charged that, if it was found from the evidence that an aban-

donment of the homestead had taken place, and thereafter plaintiff and appellant had entered into a valid agreement by which plaintiff was to become the purchaser of the land, and he was ready, able, and willing to perform the contract according to its terms, then plaintiff would be entitled to a verdict for damages, if any had been proven.

As to what was necessary to a valid contract, the jury were told that, if the homestead had been abandoned and thereafter appellant's husband entered into an agreement with plaintiff for the sale of the property, the price and terms being fully agreed upon and understood, and that in part performance plaintiff paid $50 to Ferguson for appellant, and the appellant, on being informed of such transaction, understandingly consented thereto and ratified the same, and that with her consent the earnest money was paid to her husband or deposited in the bank to his credit, then the contract was enforceable; and if appellant, in violation of such contract, conveyed the land to a third person, plaintiff is entitled to his damages, if any have been established. The measure of such recovery was stated to be the amount, if any, which the fair market value of the land, at the date in question, exceeded the contract price at which appellant undertook and agreed to sell the same.

The jury returned a verdict for plaintiff for the sum of $1,000. On appellant's motion for new trial, the court required the plaintiff to remit the sum of $200 from the amount of the verdict, or accept the alternative of a new trial. The remission being entered, the motion was overruled, and judgment entered for plaintiff for $800.

I.   It is the contention of appellant that there is no evidence whatever on which the jury could properly find an abandonment of the use of the property as a homestead. While the writer of this opinion, if a juror, would be inclined to the view that an abandonment is not shown by the requisite preponderance of the evidence, we are quite clear there was

1. HOMESTEAD:
   abandonment:
   evidence.

testimony to take that question to the jury. In the first place, there is the very material fact that the husband and wife did leave their old home and take up their residence elsewhere. There is very considerable testimony to the effect that they had for many years been expressing a desire to sell and leave the premises; that, on account of increasing age, they desired to secure a home nearer their children; and there is some evidence of statements on their part inconsistent with a reserved purpose to return and reside again upon this property. There was no error in submitting this issue to the decision of the jury.

II. It was shown by the testimony of the plaintiff that he visited the appellant and her husband after the alleged agreement was made through Ferguson, and, upon his asking them about the execution of the papers, they told him to go to their son, Charles, and he would attend to the matter. On applying to Charles, the latter put him off, telling him to wait and come again in a day or two. The witness was then asked to repeat what he claimed Charles said, and, over the vigorous objections of the appellant, was permitted to testify, in substance, that Charles said he would make out the papers to plaintiff, provided plaintiff would agree to sell him (Charles) two and one-half acres of the land for $500. The witness further testified that Charles said he had had the papers made out to himself, and would not convey to plaintiff, except on the condition named. The admission of this testimony is assigned as error. The point cannot be sustained. It having been shown that appellant and her husband sent the plaintiff to their son as the person who would attend to the matter, the son became their representative for that purpose, and what he said and did, when such application was made to him for the closing of the deal, is, upon familiar principles, competent evidence against those for whom he had been appointed or authorized to act. We do not assume, nor did the trial court assume to say, that appellant and her husband did, in fact,

2. CONTRACTS: breach: evidence: admissions.

send plaintiff to their son, but that was the theory of the plaintiff, in support of which there was direct evidence. It was within the province of the jury to find that such testimony was true, in which case the statements of the son, when asked to close the deal, had a legitimate bearing upon the disputed question whether an agreement of sale had been entered into; and the reasons assigned by him for refusing to carry it out may be treated as being given by the appellant herself. The exception taken by the appellant to the admission of the testimony must therefore be overruled.

III.   The appellant did not testify as a witness. Evidence was adduced tending to show a degree of mental weakness or *senile* decay on her part, as well as on the part of her husband, at the date of the alleged transaction. The court charged the jury that, to made a valid contract, it was essential that the minds of the parties should meet upon all its essential features; and, in determining this question, the age of the appellant and her husband and their physical and mental condition should be considered; but, if these persons had sufficient ability to reasonably comprehend ordinary business dealings, it was sufficient to enable them to make a valid agreement. The jury evidently found the showing of mental weakness insufficient to disqualify appellant from doing business of this character, and the finding in this respect has support in the record.

IV.   It is further said there is no competent evidence that the defendant ever authorized her husband or Ferguson to enter into the alleged contract. We do not so read the record. If there be no direct evidence of such authority prior to the opening of the negotiations, there is evidence that when the husband, who was the active person in the transaction, and, either alone or with the aid of Ferguson, reached an agreement with the plaintiff, it was made known to the appellant and ratified by her. There is testimony from which the jury could find that, when the check, given for the earnest money, was delivered to Fergu-

3.  SAME: agency: evidence.

son, he reported it to both Mr. and Mrs. Hart, and was told to deposit it in the bank to Hart's credit, which was done. Moreover, as is already noted, after the earnest money was paid, the testimony tends to show that plaintiff called upon both appellant and husband, and that, without any denial or repudiation of the agreement on their part, they directed him to go to their son for the papers which should consummate the sale. Ratification is the equivalent of original authorization, and there was sufficient evidence on that point to take the question to the jury.

V. It is finally urged upon our consideration that the verdict, even as reduced by the court, is excessive, and further remission ought to be required. We are disposed to think this point is well taken. Of the four witnesses called by plaintiff on the question of value, two answered that they did not know the market value of the property; one made an estimate of $500 per acre, but admitted that on a former trial he answered the same question by saying he did not know the value; and the other, who did not testify in the presence of the jury (his evidence being read from a transcript), gave it as his opinion that the land was worth $6,000 to $8,000, but admitted, on cross-examination, that he did not know of any sale of acre property in that vicinity for two years. For defendant, four witnesses, who qualified themselves to speak on the subject, placed the valuation at from $4,500 to $5,000. The land is, to a considerable extent, river bottom and subject to overflow. If the question of value were one strictly of fact, as distinguished from opinion, we should not feel justified in interfering with the verdict; but the trial court has already found it excessive, and the extent to which it ought to be reduced becomes a court question, concerning which we can speak without encroaching upon the jury's province. It is difficult to read the record and resist the conclusion that the real market value of this property was not largely in excess of the contract price. Looking at all the testimony upon the point,

4. VERDICT: reduction on appeal.

and considering the proved character and situation of the property, we think an allowance of $500 will afford ample compensation to the plaintiff for all damages he has sustained by reason of the breach of the contract.

The plaintiff will be given twenty days in which to file a remittitur of $300 from the judgment below. Upon failure so to do, the judgment will be reversed. If, however, the remittitur is made, the judgment will be reduced to $500 and interest from the date of its rendition, and, as thus modified, it will be *Affirmed* on conditions.